UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSHING PACIFIC WEST, LLC, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> FERRETTI GROUP, USA, INC., ) <br> ) <br> Defendant. ) <br> ) | Civil No. 10-cv-1345-L(DHB) <br><br> **ORDER GRANTING MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [DOC. 38]** |

On May 24, 2010, Plaintiff Pershing Pacific West, LLC ("Pershing") commenced this action against Defendants Ferretti Group, USA, Inc.[1] ("Ferretti"), MarineMax, Inc., and MTU Detroit Diesel, Inc. ("MTU"), a Delaware corporation doing business as Detroit Diesel Corporation. Thereafter, Ferretti and MarineMax removed the action to this Court. Pershing now moves for leave to file a First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 15(a)(2). Ferretti and MarineMax filed a Statement of Non-Oopposition. However, MTU opposes the motion.

The Court found this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Doc. 51.) For the following reasons, the Court **GRANTS** Pershing's motion for leave to file a FAC.

---

[1] Allied Marine, Inc. is formerly known and sued as Ferretti Group, USA, Inc. (Ferretti & MarineMax Statement of Non-Opposition 1:20–23 [Doc. 49].)

## I.     BACKGROUND

This action arises from Pershing's purchase of a 72' motor yacht, the 2009 Pershing Model 72.  (Compl., Ex. A [Doc. 1].)  The transaction took place on August 22, 2008, when Pershing and MarineMax entered into a written purchase agreement.  (Compl. ¶ 7.)  Pershing seeks to recover damages based upon the purchase and sale of the yacht, which was allegedly in defective condition at the time of the sale.  It also named Ferretti as manufacturer of the yacht, MarineMax as the seller, and MTU as the manufacturer and warrantor of the yacht's engines.  (Compl. ¶¶ 2–4.)  Pershing asserts the following claims against MTU: (1) breach of express warranty, (2) breach of implied warranty, and (3) negligence.

On November 22, 2010, United States Magistrate Judge Louisa S. Porter issued an order staying the case after the parties requested the stay so they may pursue active settlement negotiations.  (Stay Order 1:21–28 [Doc. 32].)  The stay was to remain in place for six months or until the court issued an order, whichever was later.  (*Id.* at 1:24–25.)  On May 25, 2011, Judge Porter continued the stay for another 120 days or until the court issued an order, whichever was later. (Continue Stay Order 1:28–2:1 [Doc. 35].)  The stay remained in effect until September 30, 2011.  (Kessler Decl. ¶ 3 [Doc. 38-2].)

At the time Pershing filed its complaint, its counsel believed that MTU was the manufacturer of the engines. (Kessler Decl. ¶ 2.)  However, around November 2010, and during the pendency of the stay, Pershing's counsel discovered that the actual manufacturer and warrantor of the yacht's engines was a Germany-based company called MTU Friedrichshafen GmbH ("MTU GmbH") after reviewing newly issued warranty-related information.  (*Id.* ¶ 4.) Pershing emphasizes that the discovery was made "as a result of an <u>extended warranty issued by Defendant MTU during the stay</u>." (Pl.'s Reply 2:11–15 (emphasis in original).)  Though an earlier reference by MTU's general counsel to MTU GmbH did not indicate that it was the manufacturer of the engines, a subsequent open-source investigation indicated that it likely is. (Kessler Decl. ¶ 2.)

On November 3, 2011, the day before Pershing's deadline to file a motion to amend pleadings, its counsel contacted MTU and asked whether it would stipulate to the filing of a

FAC. (Kessler Decl. ¶ 5.) No stipulation was received. (*Id.*) Consequently, Pershing filed this motion seeking leave to file a FAC in order to add MTU GmbH as a defendant in its role as manufacturer of the allegedly defective engines. (Pl.'s Mot. 1:19–23 [Doc. 38].) Though Ferretti and MarineMax filed a Statement of Non-Opposition, MTU opposes the motion.

## II.  LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been served, a party may amend its complaint only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires," and apply this policy with "extreme liberality." *Id.*; *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). However, leave to amend is not to be granted automatically. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990)). Granting leave to amend rests in the sound discretion of the district court. *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996).

The Court considers five factors in assessing a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5) whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The party opposing amendment bears the burden of showing any of the factors above. *See DCD Programs*, 833 F.2d at 186. Of these factors, prejudice to the opposing party carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). However, absent prejudice, a strong showing of the other factors may support denying leave to amend. *See id.*

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." alone can justify the denial of a motion to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Futility is a measure of the amendment's legal sufficiency. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209,

214 (9th Cir. 1988). Thus, the test of futility is identical to the one applied when considering challenges under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Baker v. Pac. Far E. Lines, Inc.*, 451 F. Supp. 84, 89 (N.D. Cal. 1978); *see Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend . . . where the amended complaint would be subject to dismissal." (citation omitted)).

## III. DISCUSSION

MTU bases its opposition on three reasons: (1) "nearly two years have passed since this action was filed," (2) "[Pershing] has known that MTU GmbH was the manufacturer and warrantor of the engines at issue for well over a year," and (3) "[Pershing] does not (and cannot) provide a compelling explanation for its delay in filing this motion." (Def.'s Opp'n 2:18–22 [Doc. 47].) Based on these reasons, MTU argues in its scant four-page opposition brief that Pershing fails to justify its "substantial" delay in filing its motion, that it would be "severely" prejudiced by allowing the amendment, and that any amendment would be futile. The Court disagrees.

MTU contends that Pershing's failure to apply to lift the stay or move for leave to amend the complaint at the time it discovered that MTU GmbH was a potential defendant shows that there was undue delay. However, MTU wholly misses the point. To begin, a "stay" is defined as "[t]he postponement or halting of a proceeding, judgment, or the like." Black's Law Dictionary (9th ed. 2009). The proceedings in this case had been completely halted. A noteworthy fact is that *all* of the parties—which included MTU—requested the stay. (Stay Order 1:18–22.) And this stay was not without purpose. Its purpose was to allow the parties to pursue active settlement negotiations. (*Id.*) During the stay, the parties apparently agreed that the yacht should be sold, and Pershing proceeded to try to sell it. If resolution of this dispute was on track, there was little urgency in adding a defendant to this action. To place the expectation on Pershing to apply to lift the stay just to add a potential defendant while on track towards a resolution is absurd. Thus, there was no undue delay.

Prejudice to the opposing party carries the greatest weight when determining whether to

grant leave to amend. *Eminence Capital*, 316 F.3d at 1052. MTU attempts to show in a single paragraph that consists of four sentences that it would be prejudiced if amendment is allowed. (Def.'s Opp'n 3:22–4:2.) The Court first notes that the word "prejudice" is not used anywhere in the four sentences that make up the body of this single paragraph. Moving on, MTU appears to be confused. It states that adding MTU GmbH would result in additional discovery and motions leading to increased litigation costs, and also curiously adds that "[MTU GmbH] will undoubtedly require time to investigate this matter, locate and retain experts, and review the significant amount of documents which have been produced in this matter to date."[2] (*Id.* at 3:27–4:2.) As Pershing astutely points out, MTU fails to assert any facts that show what additional discovery or motions would be required of it, and MTU is actually arguing that the *newly added defendant* would incur litigation costs. (Pl.'s Reply 5:1–2, 7–10.) Pershing is completely right. MTU is more successful showing that MTU GmbH would be prejudiced than itself. Needless to say, MTU's four sentences fail to show any prejudice to any degree. *See DCD Programs*, 833 F.2d at 187 ("The party opposing amendment bears the burden of showing prejudice.").

Though prejudice is the factor that carries the greatest weight, futility can be a dispositive issue when considering whether to grant leave to amend. *See Bonin*, 59 F.3d at 845. In yet another single paragraph, this time comprised of five sentences, MTU argues that the proposed amendment is futile because Pershing "fails to allege a proper basis for personal jurisdiction over a foreign entity which merely manufactured a component of the Yacht." (Def.'s Opp'n 4:7–9.) It goes on that Pershing's allegation in the Proposed FAC "fails to satisfy even the most lax interpretation of California's standard for personal jurisdiction." (*Id.* at 4:9–16.) A long string cite to three California cases, and the conclusion that the leave should not be granted

---

[2] This quote is excerpted from a longer sentence. That whole sentence reads as follows: "Moreover, in the event MTU GmbH is joined as a defendant (which is unlikely, as discussed below), it will undoubtedly require time to investigate this matter, locate and retain experts, and review the significant amount of documents which have been produced in this matter to date." (Def.'s Opp'n 3:26–4:2.) In this order, the Court altered "it" to mean MTU GmbH. Viewing the sentence as a whole, it is clear that the only antecedent for the pronoun "it" is MTU GmbH.

follow. (*Id.* at 4:13–17.) MTU provides nothing further. Given that the test of futility is identical to the one applied when considering challenges under Rule 12(b)(6), the analysis that MTU provides regarding personal jurisdiction would clearly not satisfy any challenge under Rule 12(b)(6) because that analysis is entirely non-existent here. *See Baker*, 451 F. Supp. at 89. Whether opposing a motion for leave to amend or a motion to dismiss, merely stating something does not make it so. And here, merely stating that Pershing fails to satisfy California's personal-jurisdiction standards does not make it so. Consequently, MTU fails to sufficiently show that Pershing's proposed amendment would be futile.

In sum, all of the factors favor granting Pershing leave to amend its complaint. *Johnson*, 356 F.3d at 1077. MTU's meager four-page brief at best provides a disingenuous attempt to oppose Pershing's motion. Moreover, there appears to be no dispute that MTU GmbH is the manufacturer of the yacht's engines. (Def.'s Opp'n 4:7–9 (describing MTU GmbH as "a foreign entity which merely manufactured a component of the Yacht"); Ferretti & MarineMax Statement of Non-Opposition 1:27–2:3.) Therefore, justice also compels the Court to allow amendment in order to add MTU GmbH as a party that is potentially liable for manufacturing allegedly defective engines for Pershing. *See* Fed. R. Civ. P. 15(a)(2).

**IV. CONCLUSION & ORDER**

In light of the foregoing, the Court **GRANTS** Pershing's motion for leave to file a FAC. (Doc. 38.) Accordingly, Pershing shall file its FAC by **April 16, 2012**.

**IT IS SO ORDERED.**

DATED: April 3, 2012

                                            M. James Lorenz
                                            United States District Court Judge

COPY TO:

HON. DAVID H. BARTICK
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL