UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSHING PACIFIC WEST, LLC,  )<br>            )<br>     Plaintiff,    )<br>            )<br>v.           )<br>            )<br>FERRETTI GROUP, USA, INC., *et al.*, )<br>            )<br>     Defendants.   )<br>            ) | Case No. 10-cv-1345-L(DHB)<br><br>**ORDER GRANTING FERRETTI AND MARINEMAX'S MOTION TO DISMISS PORTIONS OF THE FIRST AMENDED COMPLAINT [DOC. 65]** |

On May 24, 2010, Plaintiff Pershing Pacific West, LLC ("Pershing") commenced this action in the San Diego Superior Court against Defendants Ferretti Group, USA, Inc. ("Ferretti"), MarineMax, Inc., and MTU Detroit Diesel, Inc., doing business as Detroit Diesel Corporation ("MTU DD"). About a month later, Ferretti and MarineMax removed this action to federal court. On April 12, 2012, after receiving leave from the Court, Pershing filed its First Amended Complaint ("FAC") in order to add Defendant MTU Friedrichshafen GmbH ("MTU GmbH") to this action. Ferretti and MarineMax now move to dismiss three causes of action. Pershing opposes.

The Court found this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Doc. 74.) For the following reasons, the Court **GRANTS** Ferretti and MarineMax's motion to dismiss.

## I. BACKGROUND

### A. Sale of the Yacht

On August 22, 2008, Pershing and MarineMax entered into a written Purchase Agreement in which Pershing[1] agreed to buy a 73-foot power boat ("yacht")[2] manufactured by Pershing S.p.A., an Italian corporation wholly owned by the Ferretti Group, for $5,000,000. (FAC ¶ 9, Ex. A.) The yacht was built in 2008 with two new Series 2000 Detroit Diesel engines, separately manufactured by MTU DD and MTU GmbH (collectively, "MTU"). (*Id.* ¶¶ 5, 11.) Pershing alleges that the Purchase Agreement sought to disclaim all warranties and referred Pershing to the manufacturer's warranty. (*Id.* ¶ 10.) At the time of sale, and despite Pershing's request, Defendants each failed to provide the warranties upon which Pershing was directed to rely upon. (*Id.*) Pershing also alleges that "[n]either at the time of sale nor anytime thereafter was [Pershing] provided with the terms and conditions of the warranty." (*Id.*)

Sometime thereafter, Defendants delivered the yacht to Pershing in Fano, Italy. (FAC ¶ 12.) At the time Pershing took delivery of the yacht, and "despite continued representations as to the existence of warranties," Defendants failed to provide Pershing with any warranties. (*Id.*) Rather, Pershing was promised "such warranty information would thereafter be provided." (*Id.*) Pershing alleges that it was not provided with such warranty information, and that it was not given a "reasonable opportunity" to inspect the yacht. (*Id.*)

### B. Allegations of the Yacht's Defective Condition

On September 9, 2008, during the yacht's first trip from Fano, Italy to Croatia, a high fuel temperature warning light activated for the port engine. (FAC ¶ 13.) The next day, the high fuel temperature alarm activated for the same engine again. (*Id.*) After returning to Fano, Italy, the warning could not be reproduced. (*Id.*)

---

[1] Pershing is a limited liability company formed for the purpose of purchasing the yacht, and is wholly owned by Eric B. Benson. (FAC ¶ 1.)

[2] The parties describe the yacht as a 72-foot vessel in their moving papers. However, Pershing alleges that the yacht is 73 feet (FAC ¶ 9).

2

10cv1345

On December 16, 2008, the yacht was delivered to Port Everglades, Florida. (FAC ¶ 14.) Then, on December 26, 2008, while leaving the Bahamas Islands, another high temperature fuel warning occurred, and the engine failed to come up to a normal cruising speed of 2400 rpms. (*Id.*) Pershing alleges that the engines would not exceed 1800 rpms. (*Id.*)

From September 2008 to the present, MTU, "either directly or through its authorized service representative, has attempted to fix the problems of [the] high fuel temperature to the port diesel engine and the inability of the port diesel engine to reach its normal cruising speed of 2400 rpms." (FAC ¶ 16.) Pershing alleges that the fuel temperature on the port engine has run as high as 40 degrees above the fuel temperature on the starboard engine, exceeding 203 degrees. (*Id.*) Other problems have included a fuel leak from the overflow valve on the port engine on June 29, 2009, and a leak in the fuel pump also in the port engine on June 30, 2009. (*Id.*) The fuel pump has since been replaced, and so has a defective injector. (*Id.*) Fuel line leaks have also been detected at connections on June 27, 2009. (*Id.*)

During the same time period when the problems arose, MTU and its authorized representatives made numerous inspections of the port engine and attempted repairs on more than five different occasions, seeking to resolve the fuel-overheating problem and the port engine's inability to reach regular speeds. (FAC ¶ 17.) Pershing alleges a myriad of detailed repair attempts that occurred at least fourteen times between June 2009 and January 2010. (*Id.*) On March 28, 2010, the yacht sustained another fuel leak in the port engine resulting in the deposit of more than 4 inches of fuel in the main bilge. (*Id.* ¶ 18.) In response, MTU and its authorized representatives again attempted repairs of the engine. (*Id.*)

On April 23, 2010, Pershing's counsel sent a formal correspondence, advising Ferretti, MarineMax, and MTU DD of the "persistent defective condition of the boat and communicated its intent to seek a judicial remedy in the absence of an acceptable response." (FAC ¶ 19; *see also* Compl. Ex. B.) To date, Pershing has not received a response to that correspondence. (FAC ¶ 20.)

On May 2, 2010, the yacht was once again taken out for sea trials. (FAC ¶ 20.) Again, while attempting to bring the yacht up to speed, both the high pressure fuel alarm and fire alarms

sounded. (*Id.*) Ultimately, the yacht was taken back into the port. (*Id.*) As of the date Pershing filed its complaint, the deficiencies associated with the yacht have not been repaired. (*Id.*) In addition to the engine-related problems, the yacht also experienced "persistent and uncured deficiencies" with the Besenzoni System and port Trim Tab. (*Id.* ¶ 21.) These problems also have not been repaired. (*Id.*) Pershing alleges that "[a]s a consequence of the malfunctions . . . [it] has had to repeatedly cancel planned trips and seldom been able to use [the yacht]." (*Id.* ¶ 21.) "[T]he engines have been used in total only about 200 hours, much of which time was spent in sea trials after repairs and for the purpose of determining whether repairs were successful." (*Id.*)

On May 24, 2010, Pershing commenced this action in San Diego Superior Court, alleging causes of action for: (1) revocation of acceptance; (2) rescission; (3) breach of contract; (4) breach of implied warranty of merchantability; (5) negligence; and (6) breach of express warranty. About a month later, Ferretti and MarineMax removed this action to federal court. (Doc. 1.) After obtaining leave from the Court, Pershing filed its FAC on April 12, 2012, alleging the same causes of action, but adding MTU GmbH as a defendant. Ferretti and MarineMax now move to dismiss the causes of action for breach of contract, negligence, and breach of the implied warranty of merchantability. (Doc. 65.) Pershing opposes.

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)

(internal quotation marks omitted).  In fact, the court does not need to accept any legal conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, — , 129 S. Ct. 1937, 1949 (2009)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered.  *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds).  Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions.  *Id.*  It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  Ferretti and MarineMax request judicial notice of a Northern District of California order, and two declarations that have been filed at some point earlier in this action. (Doc. 65-2.)  Pershing has not opposed.  Accordingly, the Court **GRANTS** Ferretti and MarineMax's request.

## III. DISCUSSION

### A. Breach of Contract Against MarineMax

Pershing asserts a breach-of-contract cause of action based on MarineMax's "fail[ure] to supply a watercraft free from defects." (FAC ¶ 26.) MarineMax argues that the claim fails because the Purchase Agreement states that the sale of the yacht was "as is" and disclaimed all express or implied warranties. (Defs.' Mot. 7:26–28.) The parties agree that California Commercial Code § 2316 applies here.

#### 1. California Commercial Code § 2316

Under California Commercial Code § 2316, to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability, and in case of a writing, must be conspicuous. Cal. Com. Code § 2316(2). To exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous. *Id.* Notwithstanding the aforementioned provisions of § 2316(2), "all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *Id.* § 2316(3)(a). The Uniform Commercial Code Comment 7 for § 2316 further explains that terms such as "as is," "as they stand," "with all faults," and the like in ordinary usage are "understood to mean that the *buyer takes the entire risk* as to the quality of the goods involved."

Pershing attached the Purchase Agreement as an exhibit to its FAC, and it includes a disclaimer of warranties. (*See* FAC Ex. A.) The Seller's Disclaimer of Warranties states

> Unless Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of this sale, THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. The entire risk as to quality and performance of the boat, motor and accessories is with the Buyer subject to Buyer's rights under the manufacturer's warranty, if any. If the boat, motor and/or accessories proved defective, Buyer and not Seller assumes the entire cost of all necessary servicing and repair, subject to buyer's rights under the manufacturer's warranty, if any.

(FAC Ex. A (emphasis in original).)  A representative of Pershing acknowledged the disclaimer by initialing it.  (*Id.*)  The Purchase Agreement also states that "BUYER ACKNOWLEDGES RECEIVING A FULLY COMPLETED COPY OF THIS AGREEMENT, BUYER ACKNOWLEDGES READING AND UNDERSTANDING ALL OF THE TERMS AND CONDITIONS IN THIS AGREEMENT INCLUDING THE TERMS AND CONDITION ON THE REVERSE SIDE OF THIS AGREEMENT."  (*Id.* (emphasis in original).)  A representative from Pershing also acknowledged this provision by signing the Purchase Agreement.  (*Id.*)  The Purchase Agreement also incorporates the Additional Terms and Conditions found on the reverse side of the agreement, which also addresses the disclaimer of warranties.  (*See id.*)  That provision states that

> THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, *unless* Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale.  If Seller gives Buyer a written warranty on its own behalf or enters into a service contract in connection with this sale or within 90 days of sale, then any implied warranties shall be limited in duration to the duration of Seller's written warranty or service contract.  IN ALL CASES, SELLER SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM THE BREACH OF THIS AGREEMENT, ANY EXPRESS OR IMPLIED WARRANTY OR OTHERWISE, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.

(FAC Ex. A (emphasis in original).)

These provisions as written satisfy § 2316's requirements to express that the implied warranties are being disclaimed by identifying the implied warranties of merchantability and fitness for a particular purpose, and having the disclaimer language be conspicuous by making the text all capitalized.  *See* Cal. Com. Code § 2316(2).  To add to the conspicuousness of the disclaimers, the Seller's Disclaimer of Warranties required initialing and it is located immediately above the signature block for the agreement, and the Disclaimer of Warranties is the second provision under the Additional Terms and Conditions, located right at the top of the page.  *See id.*  The disclaimers also use the expression "as is," which § 2316 provides as an

example for language that satisfies the section's requirements. *See id.* § 2316(3)(a). Thus, the disclaimer language included in the Purchase Agreement complies with § 2316 to disclaim the implied warranties of merchantability and fitness.[3] Consequently, the implied warranties were properly disclaimed under the Purchase Agreement. *See* Cal. Com. Code § 2316.

## 2. Magnuson-Moss Warranty Act ("MMWA")

Pershing also argues that its breach-of-contract cause of action is adequately pled because MarineMax "fail[ed] to fulfill its obligations imposed by contract and controlling law." (Pl.'s Opp'n 7:26–8:6.) The controlling law that Pershing refers to is the MMWA. (*Id.* at 8:18–10:5.) Specifically, Pershing contends that MarineMax failed to comply with the MMWA's requirements when MarineMax and the other defendants "failed to provide the required warranty-related information and further failed to provide [Pershing] with a reasonable opportunity to inspect the vessel prior to sale." (Pl.'s Opp'n 9:23–25.)

Under the MMWA, "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal or equitable relief." 15 U.S.C. § 2310(d)(1). Section 702.3 of the Code of Federal Regulations, 16 C.F.R. § 702.3, presents the obligations of a seller under the MMWA. That section provides that, with certain exceptions, "the seller of a consumer product with a written warranty shall make a text of the warranty readily available for examination by the prospective buyer by: (1) Displaying it in close proximity to the warranted product, or (2) Furnishing it upon request prior to sale and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request." 16 C.F.R. § 702.3(a).

---

[3] Pershing contends that § 2316(3)(b) creates a remedy under an implied warranty when a buyer has not had the opportunity to conduct a meaningful inspection. (Pl.'s Opp'n 8:13–17.) The plain language of the statute does not support this conclusion. Therefore, without further explanation, the Court cannot conclude that any such remedy exists under § 2316(3)(b).

In its request for judicial notice, MarineMax includes a document that memorialized Pershing's acceptance of the yacht, titled "Acceptance of Vessel," dated and signed by the buyer and a witness on August 20, 2008.  (Tefft Decl. Ex. A.)  That document was first included as an exhibit to Ferretti and MarineMax's motion to dismiss filed in July 2010.[4]  (Doc. 8.)  Pershing opposed that motion, but after a cursory review, it appears that Pershing did not challenge the authenticity of the acceptance form at that time.  (Doc. 11.)  Pershing also has not challenged the authenticity of the document here.

The acceptance form unequivocally states that the buyer "received the Manufacturer's Warranty and Owner's Manuals and a full warranty procedure explanation."  (Tefft Decl. Ex. A.)  The form also acknowledges that the buyer "received a copy of this form and Copies of All Paperwork requested."  (*Id.*)  Therefore, based on the acknowledgment in the acceptance form, and consequently by Pershing's own admission, MarineMax complied with the MMWA to furnish the text of the warranty to Pershing prior to the completion of the sale in August 2008.  *See* 16 C.F.R. § 702.3.

Alternatively, it is unclear how a failure to comply with the MMWA's warranty-furnishing provision gives rise to a breach-of-contract cause of action.  The breach-of-contract cause of action is based on MarineMax's "fail[ure] to supply a watercraft free from defects." (FAC ¶ 26.)  Failure to comply with the MMWA's warranty-furnishing requirements does not appear to be substantially related to the alleged breach of the contractual obligation for MarineMax to provide a yacht "free from defects."  Pershing does not explain how this alleged statutory violation is related to the breach of contract.  In fact, the way Pershing framed the issue—"failure to fulfill its obligations imposed by contract *and* controlling law"—suggests that MarineMax allegedly breached contractual obligations, but also independently failed to comply with statutory obligations.  The latter simply does not give rise to a breach-of-contract cause of action.  *See Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971) (enumerating

---

[4] After fully briefing the motion, which also included a sur-reply, MarineMax and Ferretti withdrew the motion on November 29, 2010 (Doc. 33) in order to stay this action so the parties may pursue further settlement negotiations (Doc. 32).

the elements for a breach-of-contract cause of action). Thus, the Court alternatively rejects Pershing's MMWA argument based these grounds.

### B.    Breach of the Implied Warranty of Merchantability Against Ferretti[5]

Under California law, a plaintiff asserting a breach-of-warranty cause of action must stand in vertical contractual privity with the defendant. *Anunziato*, 402 F. Supp. 2d at 1141. A buyer and seller stand in privity if they are in adjoining links of the distribution chain. *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988). Thus, an end consumer who buys from a retailer is not in privity with a manufacturer. *Id.*

"Courts, however, have recognized an exception to the privity requirement—when a plaintiff pleads that he or she is a third party beneficiary, he or she may assert a claim for the implied warranty's breach." *In re Google Phone Litig.*, No. 10-CV-1177, 2012 WL 3155571, at *9 (N.D. Cal. Aug. 2, 2012) (citing *In re Toyota Motor Corp.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2005)). California has codified third-party-beneficiary liability as follows: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. "Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary 'must plead a contract which was made expressly for his or her benefit and one in which it clearly appears that he or she was a beneficiary.'" *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005).

Pershing alleges that MarineMax "engaged in the sale of pleasure boats" and Ferretti "engaged in the business of manufacturing, selling, and repairing pleasure boats." (FAC ¶¶ 2, 6.) For all intents and purposes, Pershing is the end consumer, MarineMax is the retailer, and Ferretti is the manufacturer of the yacht. Thus, there is no vertical privity between Pershing and

---

[5] The parties apply both California and Florida law in their respective analyses. The privity requirement for implied-warranty causes of action under both states' laws are substantially similar under California and Florida law. *See Kuhlman v. Louisville Ladder, Inc.*, No. 12-cv-1238, 2012 WL 5989435, at *2 (M.D. Fla. Nov. 30, 2012); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005).

Ferretti. Moreover, Pershing fails to cite any law or identify any allegations in the FAC that support its contention that it falls under the privity exception as a third-party beneficiary. *See In re Google Phone Litig.*, 2012 WL 3155571, at *9. Consequently, Pershing fails to establish privity with Ferretti to sustain its implied-warranty cause of action. *See Osborne*, 198 Cal. App. 3d at 656 n.6. The Court reaches the same conclusion under Florida law. *See Kuhlman*, 2012 WL 5989435, at *2 ("[U]nder Florida law, 'to recover for breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant.'").

      **C.    Negligence Against Ferretti and MarineMax**[6]

The economic loss rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (internal quotations marks omitted). The rule generally bars tort actions for contract breaches, thereby limiting contracting parties to contract damages. *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000). It precludes recovery for "purely economic loss due to disappointed expectations," unless the plaintiff "can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988. In other words, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Aas*, 24 Cal. 4th at 643. "[I]n actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965).

Ferretti and MarineMax argue that Pershing's negligence cause of action is barred by the economic loss rule. (Defs.' Mot. 9:22–28.) Specifically, they contend that Pershing's alleged damages are purely economic, and that the complaint is devoid of any allegations that the "Yacht's alleged defects, or Defendants' acts and omissions, injured any person or property, or

---

[6] The parties are litigating the sufficiency of a negligence cause of action against MarineMax, but such a claim has not been asserted. (FAC ¶¶ 48–52.) Apparently, neither party has noticed this. The Court will nonetheless address the merits of the parties' arguments regarding MarineMax's alleged negligence.

caused non-economic loss of any kind." (*Id.*) In response, Pershing does not challenge the applicability of the economic loss rule. Rather, it argues that the negligence cause of action is adequately pled because its "damage suffered may be properly attributed to component to component damage resulting from the alleged negligence." (Pl.'s Opp'n 10:8–11.) To support its argument, Pershing relies almost exclusively on *Jimenez v. Superior Court*, 29 Cal. 4th 473 (2002).

In *Jimenez*, the California Supreme Court held that a manufacturer of windows installed in a mass-produced home during its construction could be strictly liable in tort for injuries to other parts of the structure in which the defective windows were installed. *Jimenez*, 29 Cal. 4th at 476. The court also emphasized that "the economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property *other than the product itself*. The law of contractual warranty governs damage to the product itself." *Id.* at 483 (emphasis added). Tort recovery was permissible against the window manufacturer because "California decisional law has long recognized that the economic loss rule does not necessarily bar recovery in tort for damage that a defective product (e.g., a window) causes to other portions of a larger product (e.g., a house) into which the former has been incorporated . . . . '[T]he concept of recoverable physical injury or property damage' ha[s] over time 'expanded to include damage to one part of a product caused by another, defective part.'" *Id.* at 483-84 (quoting *Aas*, 24 Cal. 4th at 641).

To apply the economic loss rule under *Jimenez*, the court "must first determine what the product at issue is." *Jimenez*, 29 Cal. 4th at 483. "Only then do we find out whether the injury is to the product itself (for which recovery is barred by the economic loss rule) or to the property other than the defective product (for which plaintiffs may recover in tort)." *Id.* "[D]istinguishing between 'other property' and the defective product itself in a case involving component-to-component damage requires a determination whether the defective part is a sufficiently discrete element of the larger product that it is not reasonable to expect its failure invariably to damage other portions of the finished product." *KB Home v. Superior Court*, 112 Cal. App. 4th 1076, 1087 (2003).

Here, the product at issue is the yacht, which Pershing contends was damaged by the "failure of some of [its] components." (Pl.'s Opp'n 10:25–11:6 (emphasis in original).) To loosely analogize to *Jimenez*, the yacht is the equivalent to the house and the engines are equivalent to the windows. *See Jimenez*, 29 Cal. 4th 483-84. However, unlike *Jimenez*, where the plaintiffs sought recovery from the window manufacturer, Pershing seeks recovery from Ferretti (the yacht manufacturer) and MarineMax (the yacht retailer) for damages caused by components in the yacht which neither Ferretti nor MarineMax are alleged to have manufactured. In other words, there are no allegations in the FAC that a component manufactured by either Ferretti or MarineMax caused damage to some other component of the yacht or to the yacht itself. Based on the allegations in the FAC, MarineMax cannot be liable for component-to-component damages because it is not a manufacturer of anything related to the yacht. *See Jimenez*, 29 Cal. 4th at 483. And Ferretti also cannot be liable for component-to-component damage because Pershing's contention is not that the yacht damaged some component, but rather some components—not necessarily manufactured by Ferretti—damaged the yacht. *See id.*

### IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Ferretti and MarineMax's motion to dismiss. Accordingly, the Court:

(1) **GRANTS WITHOUT LEAVE TO AMEND** the motion to dismiss as to the causes of action for breach of contract against MarineMax and negligence against MarineMax, *see Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where . . . amendment would be futile."); and

(2) **GRANTS WITH LEAVE TO AMEND** the motion to dismiss as to the causes of action for the breach of the implied warranty of merchantability, and negligence against Ferretti.

//

If Pershing chooses to amend either of its causes of action for negligence or breach of the implied warranty of merchantability against Ferretti, it must do so by **February 7, 2013**.

**IT IS SO ORDERED.**

DATED: January 24, 2013

M. James Lorenz
United States District Court Judge

COPY TO:

HON. DAVID H. BARTICK
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL