UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERSHING PACIFIC WEST, LLC, a Delaware limited liability company<br><br>Plaintiff,<br><br>v.<br><br>MARINEMAX, INC., a Delaware corporation; MTU DETROIT DIESEL, INC. D/b/a DETROIT DIESEL CORPORATION, a Delaware corporation; MTU Friedrichshafen GmbH, a Foreign corporation; FERRETTI GROUP, USA, INC., a Florida corporation and DOES 1 through 30,<br><br>Defendants. | Civil No.   10-cv-1345-L (DHB)<br><br>**ORDER REGARDING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>**[ECF No. 95]** |

On January 17, 2013, the Plaintiff and Defendants MTU Detroit Diesel Corporation and MTU Friedrichshafen GmbH, filed a joint Motion for Determination of Discovery Dispute Regarding Responses to Requests for Production of Documents. (ECF No. 95.) After reviewing the Joint Motion and supporting exhibits, the Court GRANTS in part and DENIES in part Plaintiff's request to compel Defendants to respond to Plaintiff's document requests.

/ / /

/ / /

/ / /

# I. BACKGROUND

This action arises from Plaintiff Pershing Pacific West, LLC's[1] purchase of a 72-foot motor yacht manufactured by Pershing S.p.A, an Italian corporation wholly owned by the Ferretti Group, for $5,000,000. Plaintiff alleges the yacht was in defective condition at the time of the sale and seeks rescission and/or to recover damages based upon the purchase. Plaintiff has brought claims against MarineMax as the seller, Ferretti Group USA ("Ferretti") as manufacturer of the yacht, and MTU Detroit Diesel ("MTUDD") and MTU Friedrichshafen GmbH ("MTUFN") (collectively, "MTU") as manufacturer and warrantor of the yacht's engines. On February 7, 2013, Plaintiff filed a Second Amended Complaint, asserting the following claims: (1) Revocation of Acceptance against MarineMax; (2) Rescission against MarineMax; (3) Breach of Implied Warranty of Merchantability against MTU; (4) Breach of Implied Warranty of Merchantability against Ferretti; (5) Negligence against MTU and Ferretti; and (6) Breach of Express Warranty against MTU. (ECF No. 98.)

Plaintiff alleges the engines and fuel delivery system for the yacht are defective. Plaintiff further alleges that MTU was aware of the problems by virtue of similar problems reported on similar vessels with MTU's same engines and fuel delivery systems. Plaintiff states the MTU Defendants neglected and failed to properly and timely repair Plaintiff's yacht and failed to advise Plaintiff of the systemic nature of the problems. MTU counters that Plaintiff's allegations are meritless and/or grossly exaggerated. MTU contends Plaintiff's warranty issues were addressed properly and timely.

Plaintiff propounded Requests for Production of Documents to all Defendants, including MTUDD and MTUFN. Among the Requests, Plaintiff seeks documents relating to other vessels with similar engines and fuel delivery systems as used in Plaintiff's yacht. MTUDD objected on relevance grounds. MTUFN also objected on

---

[1] Pershing Pacific West, LLC is a limited liability company formed for the purpose of purchasing the yacht, and is wholly owned by Eric B. Benson. (ECF No. 98 at ¶ 1.)

grounds that the Court does not have jurisdiction over it, that German law does not permit the discovery sought, and that any discovery must comply with the Hague Convention.

## II.  DISCUSSION

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507.  Accordingly, district courts have broad discretion to determine relevancy for discovery purposes.  *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

District courts also have broad discretion to limit discovery.  For example, a court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(I).

**A.    MTUDD's Responses to Plaintiff's Requests for Production**

**1.    Requests Relating to Other Similar Boats and Engines**

Plaintiff propounded several Requests for Production seeking documents relating to other vessels and engines that are similar to the subject vessel.  Plaintiff claims documents relating to other vessels are relevant because at least four or five other Pershing 72 yachts have had similar issues with the fuel delivery system, and Plaintiff has recently received documents from other defendants that indicate the MTU Defendants

were aware of the problems and failed to respond properly. MTUDD served objections-only responses to these requests. MTUDD contends that it did not manufacture, sell, or warrant the engines. MTUDD also argues that mechanical problems and warranty claims related to other engines are not relevant to the warranty claims at issue in this litigation. MTUDD further argues that even if the Court finds some of the information Plaintiff seeks is relevant, the Court should limit the scope of production.

The Court notes that although MTUDD apparently did not manufacture or sell the engines, it did process warranty claims. The Court finds that information regarding other vessels that experienced similar engine and/or fuel delivery system malfunctions is relevant for discovery purposes. Defendant argues the information is not relevant to the warranty claims. However, Plaintiff has also brought a negligence claim against both MTU Defendants. If another customer experienced engine or fuel delivery system issues with a similar 12V2000M93 engine, that would be relevant to whether Defendants knew of a systemic defect in the engines. In addition, information regarding the warranty work completed on similar vessels with similar issues may be relevant to whether Defendants exercised reasonable care in correcting the issues with the subject vessel. Moreover, although Defendants dispute whether Plaintiff actually experienced mechanical problems, at this juncture in the litigation, Plaintiff is entitled to receive discovery based on the claims alleged in the Second Amended Complaint. Therefore, the Court finds the information sought by Plaintiff is relevant. However, upon reviewing the document requests, the Court agrees with MTUDD that several of the requests are overbroad. Therefore, the Court finds the scope of certain requests should be limited to documents relating to other vessels with similar engine and/or fuel delivery system issues as the subject vessel that arose while the other vessels were under warranty.

MTUDD also objects to several requests on grounds that the requests call for proprietary trade secrets, and indicates that if the Court compels production, the Court should enter a protective order. The Court declines to issue a protective order at this time. However, the Court will entertain a joint motion for a protective order if the parties

determine such an order is necessary. The parties are directed to Judge Bartick's chambers rules[2] regarding protective orders for more information on the Court's requirements for all protective orders. In addition, MTUDD objects to some of the requests on the grounds of attorney-client privilege and attorney work product doctrine. To the extent MTUDD withholds any documents as privileged, it is advised that in accordance with Federal Rule of Civil Procedure 26(b)(5), parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party to assess the applicability of the privilege or protection. Therefore, for any document withheld as privileged, MTUDD shall provide Plaintiff with an appropriate privilege log.

Accordingly, Plaintiff's request to compel responses to its Requests for Production is GRANTED in part, and DENIED in part as follows:

    a. The Court **GRANTS** Plaintiffs' Request for Production Nos. 25-26, 29, 30, 32, 34, 36, 38, 40, 42, 46, 48, 50, 52, 54, 56, 58. However, the scope of production is limited to documents that pertain to other vessels with similar engine and/or fuel delivery system problems as the subject vessel that arose while the other vessels were under warranty.

    b. The Court **GRANTS** Plaintiff's Request for Production No. 64.

    c. The Court **GRANTS** Plaintiff's Request for Production Nos. 65-66. However, the scope of production is limited to documents that relate to the sale or servicing of MTUFN-related products and parts associated with the engines and/or the fuel delivery system that are similar to the engines and fuel delivery system in the subject vessel.

    d. The Court **GRANTS** Plaintiff's Request for Production No. 67. However, the scope of production is limited to documents pertaining to distributor agreements relating to engines and/or the fuel delivery

---

[2] Judge Bartick's chambers rules are available on the Court's website at: www.casd.uscourts.gov.

system that are similar to those in the subject vessel.

 e. The Court **GRANTS** Plaintiff's Request for Production Nos. 69 and 71-73.

 f. The Court **GRANTS** Plaintiff's Request for Production Nos. 74-77. However, the scope of production is limited to documents that pertain to other vessels and/or owners that had warranty claims, or reported problems with the engines and/or fuel delivery systems within the warranty period, that are similar to Plaintiff's claims.

 g. The Court **GRANTS** Plaintiff's Request for Production Nos. 80, 81. However, the scope of production is limited to documents that pertain to warranty claims that are similar to Plaintiff's claims or the engine and/or fuel delivery system problems experienced on the subject vessel.

 h. The Court **GRANTS** Plaintiff's Request for Production Nos. 84, 85. However, the scope of production is limited to documents that pertain to problems, errors, defects, or malfunctions that are similar to Plaintiff's claims or the engine and/or fuel delivery system issues experienced on the subject vessel.

 i. The Court **GRANTS** Plaintiff's Request for Production Nos. 86-89.

 j. The Court **GRANTS** Plaintiff's Request for Production Nos. 90, 91. However, the scope of production is limited to documents that pertain to problems, errors, defects, or malfunctions that are similar to Plaintiff's claims or the engine and/or fuel delivery system issues experienced on the subject vessel.

 k. The Court **GRANTS** Plaintiff's Request for Production Nos. 94, 95. However, the scope of production is limited to documents that pertain to proposed or attempted repairs for any problems, errors, defects, or malfunctions that are similar to Plaintiff's claims or the engine and/or

fuel delivery system problems experienced on the subject vessel, and that occurred while the other vessels were under warranty.

    l.    The Court **GRANTS** Plaintiff's Request for Production Nos. 96-99.

    m.    The Court **GRANTS** Plaintiff's Request for Production Nos. 102-103. However, the scope of production is limited to documents pertaining to issues that are similar to Plaintiff's claims or the engine and/or fuel delivery system problems experienced on the subject vessel.

    n.    The Court **DENIES** Plaintiff's Request for Production No. 104. The Court finds this Request is unduly burdensome and seeks information that is equally accessible to Plaintiff.

**2.    <u>Sufficiency of Written Responses to Requests Numbers 39, 41, 63 and 70</u>**

Plaintiff argues MTUDD's responses to four of its Requests for Production are non-responsive and should be supplemented. First, with respect to Request for Production Nos. 39 and 41, Plaintiff requests that MTUDD conclusively state whether any responsive documents exist. MTUDD indicates that it will amend its responses as requested by Plaintiff. Next, Plaintiff argues the response to Request No. 63 is inadequate because MTUDD does not indicate whether any documents exist regarding the "purchase and/or sale" of the subject engines, as opposed to only the sale. MTUDD states that it neither sold nor purchased the engines at issue. Finally, Plaintiff contends the response to Request No. 70 is insufficient and states MTUDD must provide documents reflecting warranties for the fuel delivery system, not just the subject engines. MTUDD indicates that no separate warranties were issued for the fuel delivery system of the engine.

Having considered the parties position with respect these Requests for Production, IT IS HEREBY ORDERED as follows:

    a.    Plaintiff's request to compel supplemental responses to Requests for Production Nos. 39 and 41 are denied as MOOT. MTUDD has agreed to

          amend its responses to these Requests.

b.   Plaintiff's request to compel a supplemental response to Request for Production No. 63 is **GRANTED**. MTUDD shall supplement its response in accordance with its representation that it "neither sold nor purchased the engines at issue."

c.   Plaintiff's request to compel a supplemental response to Request for Production No. 70 is **GRANTED**. MTUDD shall supplement its response in accordance with its representation that "no warranties were issued for the fuel delivery system."

### 3.   Proper Timeframe of Responsive Documents

Plaintiff next argues MTUDD improperly limits the time period of responsive documents to those in existence prior to the filing of the lawsuit. Plaintiff contends the time frame of responsive documents includes all documents in MTUDD's possession, including documents obtained after the filing of the complaint. Plaintiff argues post-filing documents may be relevant to show what MTUDD knew with respect to the problems on the subject vessel and other vessels with similar problems, how MTUDD proceeded with Plaintiff's warranty claims, and how MUTDD addressed the repair attempts. MTUDD counters that the scope of production should be limited to only those documents that were in existence prior to the commencement of this action. MTUDD contends post-complaint documents are irrelevant to Plaintiff's claims. MTUDD further argues post-claim documents regarding warranty work constitutes subsequent remedial measures, which are not admissible in proving liability.

Federal Rule of Civil Procedure 26(b)(1) does not impose any limitation on discovery of matters that occur after the date the complaint is filed. *See* Fed. R. Civ. P. 26(b)(1). Therefore, the fact that Plaintiff is seeking documents that came into existence after this suit was filed is not determinative of whether those documents are discoverable. Rather, the general relevance standard applicable to discovery controls. That is, the information sought is discoverable if it is "relevant to any party's claim or defense" or

"appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Indeed, district courts within the Ninth Circuit have recognized this principle. *See United States v. City of Torrance*, 164 F.R.D. 492, (C.D. Cal. 1995) (rejecting defendant's argument that documents created after the complaint was filed were irrelevant, and noting that "[d]ocuments which bear a date after the filing of a complaint may relate to event occurring prior to the filing of the complaint.") (*citing Joseph D.B. King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5 (D.D.C. 1987). *See also Paolo v. Amco Ins. Co.*, 2003 WL 24027878 (N.D. Cal. Dec. 16, 2003) ("Contrary to [defendant's] argument, the filing date of [Plaintiff's] lawsuit does not control the relevance of the information sought.").

Here, the Court rejects MTUDD's objection that documents created after the complaint was filed are irrelevant. As Plaintiff contends, post-complaint documents may reflect on events or statements that occurred prior to the lawsuit which may bear on Defendants' liability. Further, Plaintiff's negligence claims are based on Defendants' attempts to diagnose and repair the subject vessel, which occurred both before and after the initiation of the lawsuit.

The Court further rejects MTUDD's argument that documents created after the filing of the complaint are not discoverable because they relate to subsequent remedial measures. Although Federal Rule of Evidence 407 bars the admissibility of subsequent remedial measures to prove negligent or culpable conduct, it does not control pretrial discovery. *Granberry v. Jet Blue Airways*, 228 F.R.D. 647, (N.D. Cal. 2005). ("Rule 407 governs admissibility. It does not preclude discovery."). Discovery may be had of materials that are reasonably calculated to lead to admissible evidence, even if the materials themselves are not admissible. *See also Bernat v. City of California City*, 2010 WL 4008361 (E.D. Cal. Oct. 12, 2010) (rejecting discovery objection based on Rule 407, and stating "though the evidence discovered may not, ultimately, be admitted at trial, this is no basis for refusing to disclose it during discovery").

Accordingly, IT IS HEREBY ORDERED that MTUDD shall supplement its responses to Requests for Production Nos. 23-24, 27-28, 31, 33, 35, 37, 39, 41, 43-45,

47, 49, 51, 53, 55, 57, 59-62, 82-83, 92-93, and 100-101 to include all responsive documents in its possession that predate *and postdate* the filing of this lawsuit.[3]

**B.     MTUFN's Responses to Plaintiff's Requests for Production**

   **1.     <u>Jurisdiction</u>**

MTUFN has served objection-only responses to all of Plaintiff's Requests for Production.[4] MTUFN first objects to the discovery on the grounds that it is not subject to the jurisdiction of this Court. On January 24, 2013, the Honorable M. James Lorenz denied MTUFN's Motion to Dismiss for lack of personal jurisdiction. (ECF No. 96 at 4-9.) Accordingly, the Court finds MTUFN's objection on this ground is moot.

   **2.     <u>Whether the Federal Rules of Civil Procedure or the Hague Convention Should Govern Discovery in This Case</u>**

MTUFN's second objection to Plaintiff's Requests for Production is that German law does not permit the discovery sought and that any discovery must comply with the Hague Convention. Plaintiff counters that the Hague Convention does not provide the exclusive or mandatory procedures for obtaining discovery from a foreign party, and the discovery procedures under the Federal Rules of Civil Procedure are available and controlling.

The Hague Conference adopted the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Hague Convention) in 1970. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 524 (1987) (hereinafter "*Aerospatiale*"). The Hague Convention "prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." *Id.* Both The United States and Germany have acceded to this convention.

---

[3] As the Court stated previously, if MTUDD believes any responsive documents are protected by a privilege, it must provide Plaintiff with an appropriate privilege log. Further, any concerns regarding proprietary or trade secret information may be addressed through a joint motion for a protective order.

[4] MTUFN states that notwithstanding its objections, it is in the process of reviewing documents that it intends to voluntarily produce that are related to the vessel and engines at issue.

However, in *Aerospatial*, the Supreme Court held the Hague Convention *does not* provide the "exclusive and mandatory procedures for obtaining documents and information located within the territory of a foreign signatory." *Aerospatiale,* 482 U.S. at 529.  The Court noted that while the procedures proscribed by the Hague Convention were not mandatory to satisfy international comity, "the Hague Convention does 'apply' to the production of evidence in a litigant's possession in the sense that it is one method of seeking evidence that a court may elect to employ." *Id.* at 541.  The Court further held that the concept of international comity requires a "particularized analysis of the respective interests of the foreign nation and the requesting nation," and created a balancing test for lower courts to apply.  *Id.* at 543.  In determining whether to permit discovery under the Federal Rules of Civil Procedure, courts are to balance the following factors:

> (1) the importance to the ... litigation of the documents or other information requested;
> (2) the degree of specificity of the request;
> (3) whether the information originated in the United States;
> (4) the availability of alternative means of securing the information; and
> (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Aerospatiale,* 482 U.S. at 544, n.28.

The Supreme Court noted that this list of factors is not exhaustive.  *Id.*  In *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (1992), the Ninth Circuit considered two additional factors: "[1] the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, and [2] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state." *Richmark,* 959 F.2d at 1475.

The Court will consider each of these factors in order to determine if disclosure should be ordered under the Federal Rules of Civil Procedure or whether Plaintiff should

adhere to the procedures provided by the Hague Convention.

### a. The Importance of the Discovery Requested to the Litigation

"Where the outcome of litigation does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign secrecy laws. Where the evidence is directly relevant, however, we have found this factor to weigh in favor of disclosure." *Richmark*, 959 F.2d at 1475 (internal quotation marks and citations omitted). MTUFN readily admits that documents related to the engine at issue are important to this litigation. However, MTUFN contends that documents related to other engines not at issue are not important to the litigation.

As the Court has already found, documents pertaining to other vessels and engines with similar problems as the subject vessel are relevant to this case. In the Second Amended Complaint, Plaintiff has pled causes of action for breaches of implied and express warranties of merchantability and negligence against MTUFN. (ECF No. 98, ¶¶ 38-45, 53-67.) In order to prove that a plaintiff's injuries were prominently caused by a breach of implied warranty of merchantability, courts have often permitted a showing that, under similar circumstances, similar products manufactured or sold by the defendant have had similar failures to the product at issue. *See* 26 Am. Jur. Proof of Facts 2d 1. Additionally, Plaintiff asserts that MTUFN knew that the other engines had similar issues, which is relevant to Plaintiff's causes of action, including its negligence claim. Therefore, the information sought by Plaintiff in its Requests for Production is important for proving Plaintiff's causes of action. As such, the importance of the documents to the litigation weighs in favor of compelling disclosure under the Federal Rules of Civil Procedure.

### b. The Specificity of the Discovery Request

"A second consideration in evaluating a discovery request is how burdensome it will be to respond to that request." *Richmark*, 959 F.2d at 1475. Here, while Plaintiff has propounded a large number of Requests for Production to MTUFN (81 requests in Set

No. One), each request is sufficiently specific in identifying documents sought relating to the subject engine, specific components of the engine or fuel delivery system, similar engines and communications between MTUFN and other defendants or third parties involved in the manufacture, sale, and installation of the subject engine and similar engines. Further, as ordered above, the Court has imposed limitations on the scope of production for several of the Requests. Accordingly, this factor favors disclosure under the Federal Rules of Civil Procedure.

### c.   **Location of the Information and Parties**

"The fact that all the information to be disclosed are located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business." *Richmark*, 959 F.2d at 1475. It seems likely that nearly all of the documents requested of MTUFN are located within Germany. Therefore, this factor favors non-disclosure under the Federal Rules, and favors application of the procedures proscribed by the Hague Convention.

### d.   **Alternative Means of Securing the Information**

"If the information sought can easily be obtained elsewhere, there is little or no reason to require a party to violate foreign law.... In this circuit, the alternative means must be 'substantially equivalent' to the requested discovery." *Richmark*, 959 F.2d at 1475. In several of Plaintiff's Requests for Production, documentation is sought regarding communications between MTUFN and third party corporations and other parties to the case, such as Ferreti, Marinemax, VPS, Bosch, and even the Plaintiff, Pershing. Since these other third persons/parties are United States corporations, these communications presumably can be obtained through discovery requests to parties, or subpoenas to the third persons. Therefore, as to communications with United States parties and third persons, it appears this factor weighs in favor of non disclosure under the Federal Rules. However, Plaintiff indicates that it has subpoenaed at least two of these other third parties. Plaintiff reports these entities have not been cooperative in producing documents. In addition, there are several other Requests that do not relate to

communications with other parties. These include requests for internal notes and documents reflecting defects in the subject engines and related engines. Documents responsive to these Requests are likely only in the possession of MTUFN. Since there are no clear alternative means of securing the information sought by these requests, this factor weighs in favor of disclosure under the Federal Rules of Civil Procedure.

### e.   Balancing of National Interests

"This is the most important factor. We must assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would affect important substantive policies or interests of either the United States or [Germany]." *Richmark*, 959 F.2d at 1476 (internal quotation marks and citation omitted). In assessing the strength of Germany's interests, the Court must consider "expressions of interest by the foreign state," "the significance of disclosure in the regulation ... of the activity in question," and "indications of the foreign state's concern for confidentiality prior to the controversy." *Richmark*, 959 F.2d at 1476, *citing* Restatement (Third) of Foreign Relations Law § 442, comment c.

MTUFN is incorrect in asserting that the United States does not have any important interests involved in this discovery dispute. The United States has a interest in "vindicating the rights of American plaintiffs." *Richmark*, 959 F.2d at 1477. This interest has been described as "vital." *Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1280 (7th Cir. 1990).

MTUFN asserts that compelling the production of discovery in this case would force MTUFN to violate the German Federal Data Protection Act, known as the Bundesdatenschutzgesetz ("BDSG"). The BDSG is a "blocking statute" that penalizes the unauthorized collection, processing or use of personal information. "Blocking statutes" such as the BDSG do not deprive American courts of the power to order a party to produce evidence under the Federal Rules, although the production of the evidence may violate the statute and subject the defendant to penalties. *Aerospatiale,* 482 U.S. at 543 n. 29. Such statutes are "relevant to the court's particularized comity analysis only

to the extent that [their] terms and [their] enforcement identify the nature of the sovereign interests in nondisclosure of specific kinds of material." *Id.* Therefore, even though civil penalties can be imposed on MTUFN for violating the BDSG, this Court is not deprived of the power to order MTUFN to respond to Plaintiff's Request for Production. However, the BDSG does provide insight into Germany's interests in nondisclosure of personal data. The BDSG's explicit purpose is to "protect individuals against infringement of their right to privacy as the result of the handling of their personal data." (ECF No. 95-7 at 6.)

Here, disclosure can be ordered while still achieving the policies of the BDSG. MTUFN can, and allegedly has begun to, obtain consent of its employees for disclosure of documents containing the personal information. In addition, with the exception of two Requests,[5] it does not appear that personal information protected by the BDSG is sought by Plaintiff; Plaintiff is seeking documents relating to the subject engine and similar engines. Any personal information of German citizens contained in any documents for which Defendant cannot obtain can be redacted, subject to a subsequent in camera review if necessary. Alternatively, a protective order can be requested.

Given the avenues available to MTUFN to safeguard personal information protected by the BDSG, this factor weighs slightly in favor of the United States' interest and disclosure under the Federal Rules.

### f.     Hardship to MTUFN

"The effect that a discovery order is likely to have on the foreign company is another factor to be considered." *Richmark*, 595 F.2d at 1477. This factor is concerned primarily with any sanctions or criminal penalties a foreign defendant may suffer in its own country for complying with a discovery request in a United States court. *See id.* at 1475, 1477. MTUFN contends that if it is ordered to produce documents in violation of

---

[5]The Court notes that Request for Production Nos. 54 and 55 do specifically request documents revealing the identities of owners of vessels that use the same engines and fuel delivery systems as the subject vessel. It is unknown if any of these owners are also German citizens. To the extent they are, the Court finds MTUFN can either obtain consent to disclose their personal information, redact the their personal information, or request a protective order.

1  the BDSG, it will be liable for "civil penalties ranging from €25,000 to €50,000 per
2  occurrence, or from €250,000 to €3000,000 for serious violations." (ECF No. 95 at 18.)
3  However, as MTUFN concedes, it is in the process of obtaining consent from its
4  employees for disclosure of documents containing their personal information. Therefore,
5  it is not certain that MTUFN will in fact face any civil penalties. Given the potential for
6  civil penalties, this factor weighs in favor of non-disclosure.

### g. Likelihood of Compliance

"If a discovery order is likely to be unenforceable, and therefore to have no practical effect, that factor counsels against requiring compliance ...." *Richmark*, 959 F.2d at 1478. Even if it were impossible to force a foreign entity to comply with a discovery order, this would not necessarily preclude ordering discovery under the Federal Rules. *Id.* "[A] clear statement that foreign corporations which avail themselves of business opportunities in the United States must abide by United States laws might have a substantial effect on the way [such] corporations do business in the United States in the future." *Id.*

The Court has already established jurisdiction over MTUFN by determining that MTUFN has purposefully availed itself to the laws of California. (*See* ECF No. 96.) Additionally, MTUFN has already begun efforts to review documents (relating to the vessel and engines at issue) and obtain consent of employees whose personal information appears on these documents for production in response to Plaintiff's Requests. MTUFN's effort to be responsive to at least some of Plaintiff's requests suggests that MTUFN would comply with an order compelling MTUFN to respond and produce documentation. Accordingly, this factor weighs in favor of compelling discovery under the Federal Rules.

### h. Conclusion

Taking all of the above *Aerospatiale* and *Richmark* factors into consideration, the Court concludes that discovery under the Federal Rules of Civil Procedure should govern. The documentation requested by Plaintiff from MTUFN is identified with sufficient

specificity, is highly relevant and important to the litigation, does not appear to be readily available elsewhere, and can be disclosed in such a manner that satisfies the policies of both United States and German Law.  Accordingly, IT IS HEREBY ORDERED that:

    a.    Plaintiff's request to compel MTUFN to provide supplemental responses its Request for Production is **GRANTED**.

    b.    The Court's order with respect to MTUDD, as addressed above, shall apply equally to MTUFN.

### III. CONCLUSION

For the foregoing reasons, the Court HEREBY ORDERS MTUDD and MTUFN to provide supplemental responses to Plaintiff's Requests for Production, in accordance with the terms of this order, within 30 days of the date of this order.

**IT IS SO ORDERED.**

DATED: March 11, 2013

DAVID H. BARTICK
United States Magistrate Judge